UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Rasheen Sanders,

                Petitioner,         07-CV-4346 (CPS)

   - against -

                                    MEMORANDUM
                                    OPINION
United States of America,         AND ORDER

                Respondent.

----------------------------------------X

SIFTON, Senior Judge.

On November 2, 2005, petitioner *pro se*, Rasheen Sanders, was convicted by a jury before the undersigned of being a previously convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1)[1], namely, a Hi-Point .380 caliber semi-automatic pistol and ammunition. On February 9, 2006, Sanders was sentenced to a 92-month term of imprisonment followed by three years of supervised release. Presently before this Court is petitioner's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 on the following grounds: (1) petitioner's trial counsel was constitutionally ineffective in violation of the Sixth Amendment; (2) irrelevant evidence was admitted at trial; (3) the Court improperly lowered the burden of

----

[1] 18 U.S.C. § 922(g)(1) states that "[i]t shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1).

proof in its jury charge; (4) the arresting officers did not have

probable cause to arrest petitioner; (5) all evidence against

petitioner was the fruit of an illegal arrest and thus

erroneously admitted; (6) the arresting officer perjured himself

at trial; (7) the government violated petitioner's rights under

the Confrontation Clause of the Sixth Amendment by not calling

two witnesses to testify; (8) petitioner's counsel violated

petitioner's Sixth Amendment right to compel witnesses in his

favor by failing to investigate and call the two witnesses to

testify; (9) the prosecutor inappropriately vouched for the

officers' credibility to the jury during closing remarks and

rebuttal summation; and (10) petitioner's sentence was

incorrectly calculated.[2]  For the reasons stated below, the

petition is denied.

## BACKGROUND

The following facts are drawn from the parties' submissions

in connection with this motion and the record from the underlying

criminal proceedings.

Officer Kevin Rodgers testified at trial that at

approximately 10:15 p.m. on June 11, 2005, he and his partner,

---

[2]  Petitioner makes two additional claims that I do not address
separately.  First, petitioner claims his counsel's behavior represented a
"conflict of interest," but attempts to substantiate that claim by simply
repeating his first and eighth grounds for his claim of ineffective assistance
of counsel.  Second, petitioner claims that his two potential witnesses were
"intimidated" by government agents.  There is nothing in the record to support
this claim.

Anthony Rivelli, were conducting a routine patrol in a van heading southbound on Sheffield Avenue when they heard multiple gunshots as they approached Dumont Avenue.[3] Tr. at 34, 36. Officer Rodgers advised Rivelli, who was driving the unmarked van, to drive to a residential building at the corner of Dumont Avenue and Williams Avenue where the officers had previously encountered disturbances. Tr. at 37. Before arriving at Williams Avenue, the officers stopped their van when they saw three men, including petitioner, running eastbound on Dumont Avenue. Tr. at 41.

The officers exited the vehicle and identified themselves as police to the three men. Tr. at 48. Two of the men, Antoine Singleton and William Juarbes, stopped, but petitioner increased his speed. Tr. at 49. Officer Rodgers chased petitioner and witnessed petitioner discard a firearm. Tr. at 51. The firearm discharged, but no one was injured. Tr. at 52-53. Officer Rodgers drew his weapon and ordered petitioner to stop running. Tr. at 53-54. Petitioner ran another 10-15 feet and stopped. Tr. at 54. Officer Rodgers arrested petitioner and retrieved the gun and discharged shell casing. Tr. at 57. Singleton and Juarbes were also arrested. Tr. at 61. Singleton was charged with criminal possession of a weapon in the third degree for

---

[3] Officer Rodgers' testimony before the grand jury stated that the van was on Dumont Avenue approaching Alabama Avenue when he heard the gunshots. Trial Transcript ("Tr.") at 87.

having a dagger on his person, but was not prosecuted.  Tr. at

64.  Juarbes was released without charges.  Tr. at 64.

Petitioner was arrested for violating New York Penal Law §

265.02(4)[4] and was ultimately charged with violating with 18

U.S.C. § 922(g)(1).

Petitioner's counsel spoke with Juarbes and Singleton, but

did not call either of the men to testify at trial.  Both had

been served with subpoenas by the government at the request of

petitioner's counsel and were present in court during trial.

Government Brief, Exhibit A, Affidavit of Nicole Bellina at ¶ 2

(Nov. 19, 2007).

At summation, the prosecutor's closing remarks included the

following:

> Now, ask yourself how do you evaluate
> [Officer Rodgers'] credibility?  That is your
> job.  I can't tell you how to do it. . . If
> [Officer Rodgers'] story makes sense, it
> hangs together internally and if the evidence
> shows that, he has no reason to come in here
> and make up a story about that, then I submit
> that you can rely on what he told you . . .
> That's why you can trust what Kevin Rodgers
> told you because it is backed up, not only by
> the other testimony, but by the physical
> evidence as well . . . Ladies and gentlemen,
> I ask you to look at the evidence, look at
> the testimony. . .

Tr. at 223-229.

---

[4]  New York Penal Law § 265.02(4) states in relevant part that "[a] person is guilty of criminal possession of a weapon in the third degree when . . . [s]uch person possesses any loaded firearm."  McKinney's Penal Law § 265.02(4).  This statute was repealed effective November 1, 2006, after petitioner's arrest (June 11, 2005) and conviction (November 2, 2005).

At the conclusion of the trial, the Court's instructions to the jury included the following: "[I]f . . . you do not find the defendant guilty beyond a reasonable doubt with respect to the accusation against him, then you should not hesitate to acquit." Tr. at 255. The jury deliberated briefly before indicating by note to the Court that the jurors were "roughly split" and that they had taken several rounds of votes, but it "[did] not appear the jurors are willing to vote differently without additional evidence." Tr. at 277. The Court delivered a supplemental charge emphasizing the importance of reaching a unanimous verdict and instructing the jury members to express to each other the "common sense reasons" behind their decisions instead of taking "a number of votes." Tr. at 277-281. After more deliberation, the jury returned with a guilty verdict. Tr. at 282.

Following the verdict, petitioner moved for a new trial under Rule 33 of the Federal Rules of Criminal Procedure on the ground that the Court's supplemental jury instruction was an improper and coercive modified *Allen* charge.[5] *Cf. Allen v. United States*, 164 U.S. 492, 501 (1896). On February 9, 2006, the Court denied the motion and sentenced petitioner to a

---

[5] When a jury is deadlocked, a trial court may deliver an "*Allen*" charge "that urges the jurors to continue deliberations in order to reach a verdict." *Smalls v. Batista*, 191 F.3d 272, 278 (2d Cir. 1999) (internal citation omitted). "Whether an *Allen* charge was appropriate in a given case hinges on whether it tends to coerce undecided jurors into reaching a verdict. Coercion may be found when jurors are encouraged to abandon, without any principled reason, doubts that any juror conscientiously holds as to a defendant's guilt." *U.S. v. Melendez,* 60 F.3d 41, 51 (2d Cir. 1995) (internal citation omitted).

92-month term of imprisonment followed by three years of
supervised release, adopting the recommendation of the
Presentence Investigation Report ("PSR"), which placed petitioner
in Criminal History Category V with a total of 12 Criminal
History Points, including nine points from three prior felony
convictions.[6]  PSR at 7.

Petitioner appealed his sentence on the ground that the
supplemental jury charge was a coercive *Allen* charge.  On May 11,
2007, the Court of Appeals affirmed petitioner's sentence.
*United States v. Sanders*, 232 Fed. Appx. 42, 44 (2d Cir. 2007).

## DISCUSSION

Petitioner has moved pursuant to 28 U.S.C. § 2255 [7] to

---

[6] On July 19, 2005, the government offered petitioner a plea agreement
"assuming" petitioner would be classified in Criminal History Category IV
because the government's criminal record for petitioner contained only two
13-month-or-longer incarcerations at three criminal history points each, U.S.
Sentencing Guidelines Manual §4A1.1 (2006), for a sub-total of six points.
Plea Agreement at ¶ 2.  When combined with three points for the instant
offense, petitioner had nine total criminal history points, which placed
petitioner in Criminal History Category IV.  U.S. Sentencing Guidelines Manual
§5A (2006).  However, the Probation Department in its PSR identified a third
13-month-or-longer incarceration on petitioner's record, for which petitioner
had been sentenced as a "youthful offender."  PSR at 5.  This added three
criminal history points, bringing petitioner's actual total criminal history
points to 12, which placed petitioner in Criminal History Category V.  U.S.
Sentencing Guidelines Manual §5A (2006).

[7] 28 U.S.C. § 2255(a) states that "[a] prisoner in custody under
sentence of a court established by Act of Congress claiming the right to be
released upon the ground that the sentence was imposed in violation of the
Constitution or laws of the United States, or that the court was without
jurisdiction to impose such sentence, or that the sentence was in excess of
the maximum authorized by law, or is otherwise subject to collateral attack,
may move the court which imposed the sentence to vacate, set aside or correct
the sentence."  28 U.S.C. § 2255(a).  28 U.S.C. § 2255(b) states in relevant
part that "[i]f the court finds . . . that there has been such a denial or
infringement of the constitutional rights of the prisoner as to render the
judgment vulnerable to collateral attack, the court shall vacate and set the
judgment aside and shall discharge the prisoner or resentence him or grant a

vacate or correct the sentence imposed by this Court.  Relief "is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice."  *Graziano v. U.S.*, 83 F.3d 587, 589 (2d Cir. 1996) (internal quotation marks and citation omitted).

## I.  Timeliness

28 U.S.C. § 2255(f)(1) requires § 2255 motions to be made within a one-year period of limitation that begins from "the date on which the judgment of conviction becomes final."  28 U.S.C. § 2255(f)(1).  "[A] judgment of conviction becomes final for purposes of § 2255 when the Supreme Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."  *Burrell v. U.S.*, 467 F.3d 160, 164 (2d Cir. 2006) (internal quotation marks and citation omitted).  Accordingly, petitioner's motion, filed October 3, 2007, is not time-barred under § 2255(f)(1) because it falls within one year of the Court of Appeals' May 11, 2007 affirmance of petitioner's sentence.

## II.  Ineffective Assistance of Counsel

Petitioner makes ten claims for habeas relief, nine of which

---

new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).

are procedurally defaulted because petitioner did not raise them on direct appeal. *Zhang v. U.S.*, 506 F.3d 162, 166 (2d Cir. 2007) ("In general, a claim may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review."). However, petitioner's ineffective assistance of counsel claim is not barred because "failure to raise an ineffective assistance of counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. U.S.*, 538 U.S. 500, 509 (2003). To establish his claim for constitutionally ineffective counsel, petitioner must prove two elements: (1) "the attorney's performance fell below an objective standard of reasonableness" and (2) "the outcome of his case would have been different had the attorney performed adequately." *U.S. v. Perez*, 129 F.3d 255, 261 (2d Cir. 1997) (internal citation omitted).

Petitioner has a heavy burden in establishing the first element, as "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). "The proper standard for attorney performance is that of reasonably effective assistance." *Id.* at 687. "The performance inquiry is contextual." *Purdy v. U.S.*, 208 F.3d 41, 44 (2d Cir. 2000). "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety

of circumstances faced by defense counsel or the range of
legitimate decisions regarding how best to represent a criminal
defendant." *Strickland*, 466 U.S. at 688-689.  Review of attorney
conduct must not be based on hindsight.  *Id.* at 689.  An attorney
who forgoes other potentially successful strategies is not
constitutionally ineffective on that ground and a court must
presume that, "under the circumstances, the challenged action
might be considered sound trial strategy."  *Id.* (internal
quotation marks and citation omitted).

After establishing "cause," petitioner must then establish
that he was actually prejudiced by these errors.  "[E]rror by
counsel, even if professionally unreasonable, does not warrant
setting aside the judgment of a criminal proceeding if the error
had no effect on the judgment."  *Strickland*, 466 U.S. at 691.
"To establish prejudice, the defendant must show that there is a
reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different.
A reasonable probability is a probability sufficient to undermine
confidence in the outcome."  *Knowles v. Mirzayance*, 129 S.Ct.
1411, 1422 (2009) (internal quotation marks and citation
omitted).

Petitioner raises nine grounds for his ineffective

assistance of counsel claim.[8]


*1. Admission of Irrelevant Evidence*

Petitioner argues that counsel was ineffective for failing to object to the admission of evidence that officers heard gunshots in the surrounding area before encountering petitioner as irrelevant to the weapon possession charge against him.

Although irrelevant evidence may not be admitted,[9]

> the trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed.

*U.S. v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997) (internal citation omitted).

While the evidence of the prior gunshots was neither an element nor probative of an element of the underlying offense, it provided the jury with background and context to understand how the arresting officers came to have encountered petitioner and

---

[8] Petitioner also raises these claims as independent grounds for habeas relief, but, as explained above, these claims are procedurally barred because they were not raised on direct appeal.

[9] Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

his companions that night and why the police chose to stop them.
Counsel was therefore not ineffective for not objecting to the
admission of gunshots as evidence.  Nor was petitioner actually
prejudiced by the admission of the evidence because no suggestion
was made that petitioner himself was responsible for the
gunshots.

*2.  Jury Instruction*

Petitioner states that his counsel was ineffective for
failing to object to the following portion of the Court's jury
charge, which petitioner argues lowered the "reasonable doubt"
burden of proof: "[I]f . . . you do not find the defendant guilty
beyond a reasonable doubt with respect to the accusation against
him, then you should not hesitate to acquit."  Tr. at 255.

"[T]he Constitution does not require that any particular
form of words be used in advising the jury of the government's
burden of proof," *Victor v. Nebraska*, 511 U.S. 1, 5 (1994), so
long as the charge conveys that the government must prove the
defendant's guilt beyond a reasonable doubt.  *Policano v.
Herbert*, 453 F.3d 79, 92 (2d Cir. 2006).  When a claim of jury
charge error is raised, "the proper inquiry is not whether the
instruction 'could have' been applied in an unconstitutional
manner, but whether there is a reasonable likelihood that the
jury did so apply it."  *Victor*, 511 U.S. at 6.  In *U.S. v.
Capoccia*, 247 Fed. Appx. 311, 316 (2d Cir. 2007), the court

determined that "usage . . . of the phrase 'should acquit,'
rather than 'must acquit,' was not error because 'should'
(unlike, for example, 'may') was imperative, not hortatory, and
the jury's obligation was also clear from context."

In this case, the context of the jury instruction and its
wording make clear that the word "should" is an imperative
instructing the jury to acquit if they determined that the
government had not satisfied its burden of proof.  There is no
indication in the record that the jurors convicted petitioner
based on a standard lower than reasonable doubt.  Counsel was not
ineffective for not objecting to the Court's jury charge and
petitioner was not prejudiced by the phrasing.

3. *Probable Cause for Arrest*

Petitioner argues that counsel was ineffective for failing
to show that the police lacked probable cause to arrest
petitioner.[10]

The Fourth Amendment states in relevant part that "[t]he
right of the people to be secure in their persons . . . against
unreasonable searches and seizures, shall not be violated . . .
but upon probable cause."  U.S. Const. amend. IV.  The Fourth
Amendment's protection against "unreasonable seizures" includes

---

[10] Petitioner also appears to argue that the police did not have
reasonable suspicion to stop him.  Because there was no separate stop before
the arrest, I address the claim applying the stricter standard for arrest.

arrest, which is "the quintessential 'seizure of the person' under Fourth Amendment jurisprudence." *California v. Hodari D.*, 499 U.S. 621, 624 (1991).  Thus, the Fourth Amendment requires that an officer have probable cause before making an arrest.  "A seizure occurs when (1) a person obeys a police officer's order to stop or (2) a person that does not submit to an officer's show of authority is physically restrained." *U.S. v. Simmons*, 560 F.3d 98, 105 (2d Cir. 2009) (internal citation omitted). "Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *U.S. v. Valentine*, 539 F.3d 88, 93 (2d Cir. 2008) (internal quotation marks and citation omitted).

Here, Officer Rodgers witnessed petitioner run away and discard a firearm that discharged.  At that point, Officer Rodgers had sufficient knowledge to justify a belief that petitioner was in possession of a loaded firearm in violation of New York Penal Law § 265.02(4).[11]  Thus, Officer Rodgers had probable cause to arrest petitioner and petitioner's counsel was not ineffective in failing to suppress the evidence gathered as a result of the arrest.

---

[11] See footnote 4 *supra.*

*4. Admissibility of Evidence*

Petitioner argues that because the police lacked probable cause to arrest him, the firearm seized by police was inadmissible as fruit of an illegal seizure and his counsel was ineffective for not filing a motion to suppress this evidence. However, because the police had probable cause to arrest petitioner, the evidence that he possessed a firearm was properly admitted. It would have been futile for defense counsel to make a motion to suppress the evidence.

*5. Arresting Officer's Alleged Perjury*

Petitioner claims that counsel was ineffective because she failed to convince the jury that Officer Rodgers perjured himself in his trial testimony regarding the officers' location when they heard gunshots.

A witness under oath commits perjury by "giv[ing] false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *U.S. v. Dunnigan*, 507 U.S. 87, 94 (1993). "[E]ven a direct conflict in testimony does not in itself constitute perjury." *U.S. v. Gambino*, 59 F.3d 353, 365 (2d Cir. 1995). Instead, these conflicts form part of the jury's basis for determining witness credibility. *U.S. v. McCourty*, 562 F.3d 458, 476 (2d Cir. 2009) ("It is the function of the jury to

weigh the evidence and to assess the credibility of those witnesses who testify."). "Because the courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, it is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." *Id.* at 475 (internal quotation marks and citation omitted). "An example of exceptional circumstances is where testimony is patently incredible or defies physical realities." *Id.* at 476 (internal quotation marks and citation omitted). In those cases, if the court has "a real concern that an innocent person may have been convicted," a district court may order a new trial pursuant to Federal Rule of Criminal Procedure Rule 33. *Id.*

Here, Officer Rodgers testified at trial that he and Officer Rivelli heard multiple gunshots as they approached Dumont Avenue while heading southbound on Sheffield Avenue. Tr. at 34, 36. However, Officer Rodgers' testimony before the grand jury stated that their van was on Dumont Avenue approaching Alabama Avenue when they heard the gunshots. Tr. at 87. Defense counsel highlighted this inconsistency to the jury during her cross-examination of Officer Rodgers and her closing arguments. Tr. at 87, 230-31. The Court must presume that the jury took account of the inconsistency when determining Officer Rodgers' credibility. There are no "exceptional circumstances" requiring the Court to

intrude upon the jury's credibility determination. Petitioner's claim that Officer Rodgers' perjured himself must fail and counsel was not ineffective for failing to convince the jury of that claim.

*6. Confrontation Clause*

Petitioner asserts that his counsel was ineffective since she did not object that the government violated petitioner's rights under the Confrontation Clause of the Sixth Amendment by not calling Juarbes or Singleton, the two men accompanying petitioner when he was arrested.

The Sixth Amendment provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Thus, "[a] witness's testimony against a defendant is . . . inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527, 2531 (2009) (internal citation omitted).

Petitioner's claim is meritless because the government did not introduce evidence – testimonial or otherwise – from either of these two men and thus did not trigger petitioner's Sixth Amendment right to confrontation.

7.  *Sixth Amendment Right to Compel Witnesses*

Petitioner argues that counsel was ineffective by not herself calling either of Juarbes or Singleton to testify at trial.

The Sixth Amendment provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI.  "The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial."  *U.S. v. Messina*, 131 F.3d 36, 41 (2d Cir. 1997).  *Strickland* provides that these professional decisions are generally to be accorded deference.  466 U.S. at 689 (stating that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").  Petitioner must show that "counsel was motivated by self-interest rather than by a fair assessment of the good of his client" before the court can "second-guess [the] decision not to call the witnesses."  *Messina*, 131 F.3d at 41.  Defense counsel has an "overarching duty to advocate the defendant's cause," *Strickland*, 466 U.S. at 688, and examples of self-interested actions by attorneys undermining this duty include "cut[ting] corners in . . . representation because he was not getting paid" or "fail[ing] to call witnesses crucial to the defense . . . in order to shorten preparation time, reduce the length of the trial, or save witness fees and fees for serving

subpoenas." *Messina*, 131 F.3d at 41.

Here, defense counsel had twice interviewed Juarbes and once spoke with Singleton. Affidavit of Nicole Bellina, Esq. at ¶ 2. Further, both men were served with subpoenas by the government at defense counsel's request and were present at trial. *Id.* Petitioner does not offer any facts to demonstrate that defense counsel's choices were ineffective or inappropriate. Nor does petitioner demonstrate prejudice arising from counsel's actions because he does not present any evidence that the testimony of the witnesses would have assisted his defense.

*8. Prosecutorial Misconduct*

Petitioner claims that counsel was ineffective for failing to object to the prosecutor inappropriately vouching for the credibility of government witnesses, particularly Officer Rodgers, during closing remarks and rebuttal summation.[12]

While "the Government has broad latitude in the inferences it may reasonably suggest to the jury during summation," *U.S. v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005) (internal quotation marks and citation omitted), "[i]t is . . . well established that the prosecution may not vouch for its witnesses' credibility. Vouching may prejudice a defendant by suggesting to a jury that

---

[12] Petitioner also appears to claim that the prosecutor interjected his personal opinion about petitioner's guilt into closing arguments. However, petitioner does not highlight any specific instances and review of the closing remarks and rebuttal summation does not reveal the prosecutor making any such claims.

there is additional evidence, not introduced at trial but known to the prosecutor, that supports the witness's credibility." *U.S. v. Newton,* 369 F.3d 659, 681 (2d Cir. 2004) (internal citations omitted).  In analyzing whether the prosecution improperly vouched for witness credibility, we examine the prosecutor's remarks in context because "what might superficially appear to be improper vouching for witness credibility may turn out on closer examination to be permissible reference to the evidence in the case." *U.S. v. Perez*, 144 F.3d 204, 210 (2d Cir. 1998).  If, in context, "the prosecutor did not 'imply the existence of extraneous proof,' we cannot say that his statements were an improper vouching for the credibility of witnesses." *Id.*

Here, petitioner points to the prosecution's use of the word "rely" to suggest that the prosecution personally vouched for the credibility of its witnesses with the following statement: "If [Officer Rodgers'] story makes sense, it hangs together internally and if the evidence shows that, he has no reason to come in here and make up a story about that, then I submit that you can rely on what he told you . . ." Tr. at 224.  However, the prosecutor repeatedly stated elsewhere in summation that it is for the jury to judge witness credibility based on the evidence adduced at trial, e.g., "Now, ask yourself how do you evaluate [Officer Rodgers'] credibility?  That is your job.  I can't tell you how to do it. . ." Tr. at 223; "That's why you can trust what Kevin Rodgers told you because it is backed up, not only by the other testimony, but by the physical evidence as

well . . ." Tr. at 228; "Ladies and gentlemen, I ask you to look at the evidence, look at the testimony. . ." Tr. at 229. There is no evidence that the prosecution improperly vouched for its witnesses. Counsel was not ineffective for not raising the claim that the prosecutor was inappropriately vouching for the credibility of government witnesses during closing remarks and rebuttal summation.

*9.  Sentence Calculation*

Petitioner argues that counsel was ineffective for not contesting his incorrectly calculated sentence. Petitioner argues that he was incorrectly sentenced because his rejected plea agreement assigned him to Criminal History Category IV, whereas he was sentenced according to the range set by Criminal History Category V.

Petitioner's claim fails for the several reasons. First, a rejected plea agreement is inapplicable to a defendant's post-trial conviction and sentencing. *See U.S. v. Negron*, 524 F.3d 358, 361 (2d Cir. 2008) ("Nothing in [18 U.S.C.] § 3553(a)[13] or controlling precedent *requires* a district court to consider a rejected plea offer.") (emphasis in original). Second, even had petitioner accepted the plea agreement, he would have been sentenced in Criminal History Category V when the Probation

---

[13] 18 U.S.C. § 3553(a) lists "factors to be considered in imposing a sentence." 18 U.S.C. § 3553(a).

Department discovered the third prior felony conviction in preparing a pre-sentence report. The plea agreement stated that it was "assuming" that petitioner would be in Criminal History Category IV. Plea Agreement at ¶ 2. The estimate based on that assumption was not binding. Plea Agreement at ¶ 3. Third, petitioner does not dispute that he committed this third felony. Thus, petitioner's sentence was not calculated on an erroneous criminal history and counsel was not ineffective for failing to contest.

## CONCLUSION

For the reasons stated above, petitioner's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is denied. Petitioner is denied a certificate of appealability because he has not made a substantial showing of the denial of a constitutional right. *See Reyes v. Keane*, 90 F.3d 676, 680 (2d Cir. 1996). The Clerk is hereby directed to transmit a copy of the within to the parties and mail a copy of the within to petitioner.

SO ORDERED.

Dated:    Brooklyn, New York
          July 27, 2009


                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge